THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PISSED AWAY N6VC, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:11-cv-04345-NKL |
| | ) |
| JAMES F. COOPER, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**ORDER**

Pending before the Court is Defendant James Cooper's motion to dismiss the Plaintiff's claims for misrepresentation and fraud [Doc. # 11]. For the following reasons, the Court grants the motion as to Plaintiff's claim for negligent misrepresentation and denies the motion as to Plaintiff's claim for fraud.

**I.  Background**

Plaintiff, Pissed Away N6VC, LLC, is a limited liability company organized under Washington law and registered to do business in California. Cooper is a citizen of Missouri and an aircraft mechanic with certification from the Federal Aviation Administration ("FAA"). Plaintiff contracted to buy an aircraft from a third party. Cooper was not a party to that contract, but, at the seller's request, performed maintenance inspections and made certifications regarding the mechanical condition and airworthiness of the aircraft as part of that purchase. Cooper certified in the aircraft's log books that he had performed a "100-hour

inspection" on the aircraft and found it airworthy. [Doc. # 9 at 3-4]. Plaintiff's agent completed the purchase of the plane, took possession of it and flew to Plaintiff's location.

Upon receipt of the aircraft from its agent, Plaintiff identified several conditions in the aircraft and claims they are contrary to Cooper's representations in the aircraft logbook. This included:

> elevator cables that were not properly secured, elevator rear sector nuts that were ready to fall off, rubber hoses that were significantly out of date, many maintenance access panels that had not been opened in years (indicating that the attested maintenance work, including but not limited to the Grumman Inspection Program, could not actually have been performed), power wires that controlled the turning and banking of the Aircraft that were disconnected and hanging loose, carburetor air temperature that was not working, GPS that was inoperable, vertical and horizontal stabilizers infested with bird's nests and corrosive animal feces, flight controls that were stiff and unresponsive, all bearings in need of re-lubing, control surfaces that had to be recovered, abnormal oil leaks, pushrod tube hoses and valve tappet guide housings that were leaking fluid, nut plates that were missing throughout, landing gear struts that had not been overhauled, and main landing gear struts and brakes that were leaking.

[Doc. # 9 at 4-5].

## II. Discussion

### A. Negligent Misrepresentation

Cooper argues that in inspecting the aircraft he only had a duty to the FAA, and not to Plaintiff, and that Plaintiff is thus not entitled under Missouri law to bring a claim of negligent misrepresentation against Cooper.

Missouri has adopted the Restatement (Second) of Torts § 552 for determining claims of negligent misrepresentation. *Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809, 813 (Mo. Ct. App. 2002). Cooper's duty is thus defined either by § 552(3), which states:

> The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

or by § 552(2), which states:

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> > (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> >
> > (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Plaintiff contends that § 552(2) provides the relevant duty. Plaintiff relies for its argument on *Vogel v. Foth and Van Dyke Assocs., Inc.*, 266 F.3d 838, 841 (8th Cir. 2001) (applying Iowa law). The plaintiffs in *Vogel* were two landowners who sued an engineering and consulting firm, claiming that the defendant "acted negligently in proposing a manifestly unsuitable site as a potential location for a landfill" to a waste management agency. *Id*. at 840. The plaintiffs claimed they suffered economic damages because the site announced as having been selected for the landfill was adjacent to their property. *Id*. The court held that § 552(2) provided the relevant duty for the defendant, which was limited to "the person or one of a limited group of persons for whose benefit and guidance [the firm] intends to supply

3

the information..." *Id.* at 841 (alteration in original). But *Vogel* involved a private firm hired as consultants, rather than an FAA-certified mechanic. Unlike the Plaintiff in this case, the plaintiffs in *Vogel* did not argue that the defendants were "under a public duty" to make the representation at issue. Because § 552(3) specifically relates to defendants "under a public duty", it is appropriate to apply that section rather than § 552(2) and therefore, *Vogel* is not controlling.

This conclusion is supported by *Rocky Mount. Helicopters v. Bell Helicopter Textron, Inc.,* 24 F.3d 125, 132-33 (10th Cir. 1994). That case held that a helicopter blade manufacturer's representations to the FAA, in order to get a "type certificate", were made under a public duty and that § 552(3) thus applied. *Id.* at 133. The representations in this case were made to the FAA in order to get a certification of "airworthiness." The facts of *Rocky Mountain Helicopters* are thus highly factually analogous to this case. The Court finds persuasive the reasoning of *Rocky Mountain Helicopters*; because Cooper made his representation to the FAA in order to obtain certification from a government agency, and Cooper was acting "under a public duty" and § 552(3) thus provides the appropriate standard.

The question, then, is whether the relevant FAA statute required Cooper to certify the aircraft as airworthy for the benefit of Plaintiff as a purchaser of the aircraft. In *Rocky Mountain Helicopters*, the buyer of a used helicopter sued the helicopter's manufacturer when the buyer found water trapped inside the helicopter blades. 24 F.3d at 127. The plaintiff argued that the manufacturer's representation to the FAA – in order to get a "type" certificate – that its helicopter blades were designed to prevent water from getting trapped

4

inside amounted to a negligent misrepresentation, and that the plaintiff purchaser was the intended beneficiary of the FAA's type certification requirements. *Id*. at 133. The Tenth Circuit held that the purpose of the FAA's type-certification statute was safety and that it was meant to protect passengers from the risk of breakdown during flight rather than protecting buyers from the risk of breakdown during ownership. *Id*. Because the plaintiff was suing "in its status as purchaser rather than as a potential accident victim", the defendant owed the plaintiff no duty, and the court therefore dismissed the plaintiff purchaser's claim for negligent misrepresentation. *Id*. Cooper also relies heavily on *Schroeder*, which relied on *Rocky Mountain Helicopters* to reverse a trial court's finding of liability – in favor of an aircraft buyer – for a mechanic's allegedly negligent assertion that an airplane met FAA requirements for airworthiness. *Schroeder v. White*, 624 N.W.2d 810, 813 (Mn. Ct. App. 2001).

The Court finds persuasive both *Rocky Mountain Helicopters* and *Schroeder*, and holds that Cooper did not have a duty to Plaintiff as required for a claim of negligent misrepresentation. Plaintiff argues that these cases are distinguishable because both cases involved remote buyers whereas in this case Cooper was allegedly aware of Plaintiff's transaction. But even if Plaintiff's allegations are true, they do not address that the FAA certification statutes do not concern themselves with the sale and purchase of aircrafts. For example, these FAA statutes do not require an aircraft to be inspected or certified "airworthy" in order to be sold. Rather, the FAA statutes only appear to require an aircraft to be airworthy if it is to be flown. 14 C.F.R. 91.409. The FAA regulations require an

5

aircraft owner to transfer records upon sale of an aircraft, but do not require an inspection upon sale of an aircraft. 14 C.F.R. 91.419. Because only the operation of an aircraft, and not the sale of an aircraft, trigger a required FAA inspection and certification of "airworthiness," and because Plaintiff is suing as a purchaser and not as a potential accident victim, Cooper did not have a statutory duty to Plaintiff that can support a claim for negligent misrepresentation. *See Rocky Mountain Helicopters*, 24 F.3d at 133. The Court thus dismisses Plaintiff's claim for negligent misrepresentation.

### B. Fraud

In Missouri, the elements for fraudulent misrepresentation are:

(1) a representation;

(2) its falsity;

(3) its materiality;

(4) the speaker's knowledge of its falsity or ignorance of its truth;

(5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated;

(6) the hearer's ignorance of the falsity of the representation;

(7) the hearer's reliance on the representation being true;

(8) the hearer's right to rely thereon; and

(9) the hearer's consequent and proximately caused injury.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. banc. 2010).

Cooper argues that Plaintiff's fraud claim fails because Cooper's allegations do not

6

show that Cooper made any representation to Plaintiff. Specifically, Cooper argues that, in Missouri, a fraud claim must be based on a representation made directly to the plaintiff, and that Cooper's representation made in an airplane logbook was not a direct representation to Plaintiff. In support of this argument, Cooper cites several Missouri fraud cases based on direct representations. But Plaintiff correctly points out that although a "representation" is often direct in fraud claims, that it need not be so to support a fraud claim. For example, a representation can support a claim for fraud even if it is made to a party whose "specific identity" is unknown at the time of the representation, so long as the speaker knows or should have known his representation would be repeated to a third party and would influence that third party's conduct in a transaction. *Wagner v. Mortg. Info. Servs., Inc.*, 261 S.W.3d 625, 640 (Mo. Ct. App. 2008). Here, Plaintiff alleges that Cooper "made these representations with knowledge of the sale negotiations and directed them to Plaintiff with the intent to deceptively induce Plaintiff to complete the transaction and take possession of the Aircraft for cross-country flight." [Doc. # 9 at 6]. This alleged representation supports a claim for fraud under Missouri law, and Cooper's argument thus fails.

Cooper claims that even if Cooper made a representation in the aircraft's logbook, causation is lacking because Plaintiff never alleged that it saw this logbook before it undertook its purchase. Cooper argues that because the allegations of the Complaint demonstrate that Cooper's inspection took place on November 11, 2010, and because the Warranty Bill of Sale had already been executed on October 21, 2010, that any representation by Cooper in the aircraft logbook could not have influenced Plaintiff's decision to enter an

7

agreement to buy the aircraft. Plaintiff agrees that it had already entered an agreement to buy the aircraft when Cooper made his alleged representations, but alleges that it would not have *finalized* that agreement absent Cooper's representations. [Doc. # 9 at 4] ("Relying on Defendant's material representations...Plaintiff completed the Aircraft transaction..."). Plaintiff claims that, under the terms of the contract it had entered at the time of its representation, Plaintiff was free to finalize or back out of the deal based on the results of Cooper's inspection. Plaintiff has thus satisfied the Court that it is plausible that Cooper's representation induced Plaintiff into finalizing an agreement that Plaintiff was otherwise free to back out of. Plaintiff's Complaint thus sufficiently pleads causation.

Cooper also argues that Plaintiff's claims fail because Cooper's allegations do not show that Cooper intended for Plaintiff to act on any representation he made. Cooper argues that his entry in the aircraft logbook was a representation only to the FAA, as part of a statutory duty, and that he could not have intended for Plaintiff to act on that representation as would be required to prove a claim for fraud. Plaintiff responds that intent is a question of fact that should not be resolved at the pleading stage, citing *Crestwood Shopps, L.L.C., v. Hilkene*, 197 S.W.3d 641, 655 (Mo. Ct. App. 2006). Plaintiff acknowledges that Cooper had a statutory duty to inspect the aircraft and enter the results of that inspection in the log book, but alleges that Cooper was aware of Plaintiff's transaction, was retained by the aircraft's seller, and entered false results in the logbook with the intent to induce Plaintiff to finalize its purchase of the aircraft. Plaintiff has not explicitly articulated a theory of why Cooper would be motivated to lie, or alleged any facts that directly show that the alleged disparity

8

between Cooper's representation and the actual condition of the aircraft were intentional. But the Court agrees that the facts alleged by Plaintiff support an inference that Cooper benefitted from the sale of this aircraft, if only because he is more likely to be retained by future aircraft sellers, and presumably earn more fees, if his representations consistently allow sellers to finalize the sales of aircrafts of questionable quality. Further, although allegations of fraud must be stated with particularity, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(c). Thus, Plaintiff sufficiently alleges that Cooper intended for Plaintiff to act on Cooper's representations.

Cooper further argues that Plaintiff's claims fail because Cooper's allegations show that Plaintiff was independently aware of the conditions of the aircraft. Cooper argues this suggests that Plaintiff did not, in fact, rely on any representations by Cooper, or if it did so, then that reliance was not reasonable. To establish a claim for fraudulent misrepresentation, the plaintiff must prove the hearer was ignorant that the representation was false. *Dechant v. Saaman Corp.*, 63 S.W.3d 293, 295 (Mo. Ct. App. 2001). Additionally, the hearer's reliance on a representation must be reasonable. *Id.* at 295. The plaintiff has the burden to show the undisclosed information was not within the plaintiff's reasonable reach or could not be discovered with reasonable diligence. *Fairmont Foods Co. v. Skelly Oil Co.*, 616 S.W.2d 548, 550 (Mo. Ct. App.1981). Whether a plaintiff should have been able to discover a condition is usually a question of fact. *See Burch v. Moore's Super Market, Inc.*, 397 S.W.2d 590, 593 (Mo. 1965).

9

Viewing the allegations in the light most favorable to Plaintiff, the Court cannot hold that Plaintiff was independently aware of the alleged defects. Plaintiff clearly alleged that it was ignorant that Cooper's representations were false. [Doc. # 9 at 6]. Cooper argues that this allegation conflicts with the alleged defects of the aircraft, such as disconnected wires and a broken GPS, both of which would affect flight and be patently obvious. But the Court cannot evaluate whether Plaintiff's allegations conflict without specialized aviation knowledge. This point is illustrated by Cooper's argument that stabilizers "infested with bird's nests and corrosive animal feces," as alleged by Plaintiff, would also be patently obvious. While Cooper's argument is persuasive in isolation, it is not persuasive in light of Plaintiff's claim that the stabilizers on the aircraft are in the tail section, covered by the skin of the aircraft, and thus presumably could not be discovered without disassembling the aircraft. [Doc. # 18 at 18]. It is thus plausible that Plaintiff could not have discovered with reasonable diligence the falsity of Cooper's statement, and Plaintiff's claim thus cannot be dismissed at this time.

In addition, Cooper argues that Plaintiff's claims fail because Cooper's allegations do not show that Plaintiff had a right to rely on any representation he made. This, because Plaintiff's sale contract with Mr. Stricker disclaimed all representations about the condition of the aircraft. Cooper cites no authority in making this argument, and the Court does not find it persuasive. Cooper does not argue that Cooper was a party or a third-party beneficiary to Plaintiff's sale contract. Thus, the contents of that contract arguably do not affect Plaintiff's rights as against Cooper. *See RLI Ins. Co. v. Southern Union Co.*, 341 S.W.3d

10

821, 830 (Mo. Ct. App. 2011) ("[A]n integration clause in a contract is primarily intended to prevent one party to a contract from claiming an agreement with the other party to the contract that is at variance with the written contract."). At this preliminary stage, the Court rejects Cooper's argument.

Finally, Cooper argues Plaintiff's claim is res judicata because Plaintiff has brought three actions against three parties arising out of the purchase of its aircraft. Cooper cites a Missouri case for the proposition that a cause of action cannot be split if it would result in separate actions that "arise out of the same act, contract or transaction." *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. 1991). But that same case also relied on the Restatement (Second) of Judgments § 24 (1982) to clarify that this general bar on "claim splitting," when applicable, extinguishes "all rights of the plaintiff to remedies against *the defendant* with respect to all or any part of the transaction...out of which the action arose." *Id.* (emphasis added). Because Cooper does not argue that he was a *defendant* in any previous case brought by Plaintiff, his argument fails under his own authority.

### C. Plaintiff's Request for Oral Argument

Plaintiff has requested oral argument on this motion. But Plaintiff has not explained why oral argument would be beneficial in this situation, and the Court finds oral argument unnecessary to resolve the legal issues before it. Thus, Plaintiff's request for oral argument on this motion is denied.

### III. Conclusion

For the foregoing reasons, it is ORDERED that Defendant James Cooper's motion to dismiss [Doc. # 11] is GRANTED as to Plaintiff's claim for negligent misrepresentation and DENIED as to Plaintiff's claim for fraud.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: April 30, 2012  
Jefferson City, Missouri